UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PAMELA SCARLATELLI | : | |
| | : | |
| v. | : | C.A. No. 06-84T |
| | : | |
| SWAROVSKI OPTIK NORTH AMERICA LIMITED, et al. | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on a Motion to Dismiss (Document No. 5) (the "Motion") filed by Defendant, Werner Trattner ("Trattner" or "Defendant"). Trattner seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(2) on the ground that this Court lacks personal jurisdiction over him. Plaintiff, Pamela Scarlatelli ("Plaintiff"), filed an Opposition to Trattner's Motion to Dismiss (the "Opposition") (Document No. 16). Trattner replied to Plaintiff's Response on May 1, 2006. (Document No. 17).

The Motion has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72. A hearing was held on June 15, 2006. After reviewing the Motion and the Response, in addition to performing independent research, this Court recommends that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Document No. 5) be DENIED.

**Facts**

Plaintiff commenced this action by filing an eight-count Complaint in Providence County Superior Court on February 8, 2006. Plaintiff alleges that she was subjected to a sexually hostile

work environment, discrimination and retaliation in connection with her employment with Swarovski Optik North America Limited ("SONA"). Plaintiff alleges violations of the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1, et seq., the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1, et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq. and 42 U.S.C. § 1985. Defendants removed to this Court in a timely fashion on February 21, 2006.

In 1993, Plaintiff was hired by SONA as a sales representative in Cranston, Rhode Island. Compl., ¶¶ 5, 7 and 22. Defendant M. James Morey ("Morey") was SONA's President and one of Plaintiff's direct supervisors during the relevant time period. Id., ¶ 23 and 31. Plaintiff held the position of Senior Manager, Communications/Industry Relations, at the time of her termination from employment with SONA. Id., ¶ 6. Morey and Plaintiff are Rhode Island residents. Id., ¶¶ 4 and 11.

Beginning in 2000 and lasting through her termination in 2005, Plaintiff alleges that Morey subjected her to discriminatory and harassing conduct. Id. ¶ 24. Plaintiff also alleges that on several occasions, Morey stated he did not want Defendant David Himsey ("Himsey"), the Executive Vice President of Human Resources for Swarovski North America Limited ("SNAL") and SONA, to be informed of any human resource problems. Id.,¶ 31. Fearing retaliatory termination, Plaintiff did not inform Himsey. Id. Instead, in 2001, Plaintiff verbally reported the harassment to Trattner on at least two occasions. Compl., ¶ 32. Trattner, a resident of Austria, was the Managing Director of Sales for SONA's parent company, Swarovski Optik Austria ("SOA"). Aff. of Trattner, ¶ 1. Trattner and Morey both sat on the Board of Directors for SONA. Id., ¶ 3. Plaintiff alleges that Trattner had supervisory authority over Morey. Compl., ¶ 14. Plaintiff avers that Trattner assured

her that he would speak with Morey about his behavior. Pl.'s Aff., ¶ 7. After informing Trattner about the offensive conduct, Plaintiff claims she was subjected to increased harassment. Id., ¶ 9.

"On June 17, 2005, Plaintiff was terminated without explanation and without cause." Compl., ¶ 41. She subsequently brought this suit against Morey, Himsey, Trattner, SONA, SNAL and SOA. Plaintiff contends that SONA, SNAL and SOA are closely related entities, managed by a single Board of Directors. Pl.'s Aff., ¶ 3. She also asserts that SNAL and SONA employed the same Human Resource Manager, Himsey. Id., ¶ 7. Plaintiff avers that Trattner exercised authority over many employment and human resource decisions regarding SONA. Id.

Trattner contends he does not have sufficient minimum contacts with this District to be subject to either general or specific personal jurisdiction in this Court.

**Standard of Review**

It is well established that the burden rests with the plaintiff to make a prima facie showing to withstand a challenge to personal jurisdiction. Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001) (citing Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997)). See also, Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). In assessing the plaintiff's prima facie case, the Court must accept as true the "plaintiff's (properly documented) evidentiary proffers" and construe them "in light most congenial to plaintiff's jurisdictional claim." See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34, 51 (1st Cir. 1998). See also Trio Realty, Inc. v. Eldorado Homes, Inc., 350 F. Supp. 2d 322, 325 (D.P.R. 2004) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)) (the court "draw[s] the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the

light most hospitable to plaintiff."). In setting forth the prima facie case, the plaintiff is required to bring to light credible evidence and "cannot rest upon mere averments, but must adduce competent evidence of specific facts." Barrett, 239 F.3d at 26 (citing Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)).

Because Trattner does not primarily work or live in Rhode Island, he is subject to personal jurisdiction in this Court only if he has certain minimum contacts with the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Whether sufficient minimum contacts exist depends on the quality and nature of Trattner's activity, but it is essential that there be some act by which Trattner purposefully availed himself of the privilege of conducting business within the forum state, thus invoking its benefits and protections. Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995). The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random', 'fortuitous', or 'attenuated' contacts...." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1984). In applying the minimum contacts analysis, the courts recognize two types of jurisdiction – specific and general.

### A. Specific and General Jurisdiction

In this case, Plaintiff asserts claims of both specific and general jurisdiction over Trattner. Although Plaintiff's argument for general jurisdiction is relatively weak, that issue need not be decided here. This Court finds sufficient minimum contacts to establish specific jurisdiction. The Supreme Court has stated that: "where plaintiff's claims 'arise out' of or are 'directly related' to defendant's contacts with the forum state, a court exercises specific jurisdiction." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n.8 (1984).

In the analysis of specific jurisdiction, the court applies two general rules. First, the forum in which the Federal District Court sits must have a long-arm statute that grants jurisdiction over the defendant. See Barrett, 239 F.3d at 26. Second, "the plaintiff must...show sufficient minimum contacts such 'that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution.'" LaVallee v. Parrot-Ice Drink Prod. of Am., Inc., 193 F. Supp. 2d 296, 302 (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, authorizes a court to exercise jurisdiction over non-resident defendants to the fullest extent permitted by the United States Constitution. See Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990); see also Morel ex rel. Moorehead v. Estate of Davidson, 148 F. Supp. 2d 161 (D.R.I. 2001). Accordingly, the Court need only decide whether the assertion of personal jurisdiction over Trattner comports with due process principles.

**B. Due Process Considerations**

Where specific jurisdiction is asserted, the First Circuit has developed a three-prong test for analyzing the due process considerations for the existence of specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). In order for a court to exercise specific personal jurisdiction, all three factors – relatedness, purposefulness and reasonableness – must be satisfied.

**1. Relatedness**

The first prong of the due-process test is a consideration of relatedness. To meet the relatedness requirement of specific personal jurisdiction, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." United Elec., 960 F.2d at 1089. Relatedness is intended to be a "flexible, relaxed standard." Sawtelle, 70 F.3d at 1389 (citing Pritzker, 42 F.3d at 61).

The claim underlying the litigation directly relates to Trattner's activities within Rhode Island. In addition to being the Managing Director of Sales at SOA, Trattner was also a Director of SONA. Aff. of Trattner, ¶ 3. Between the years 2000 and 2005, Trattner visited SONA's offices in Cranston seventeen times. Id. ¶ 5. Trattner states that each visit to Rhode Island was related to reviewing the operations of SONA, Plaintiff's former employer. Id. ¶ 6. In her Affidavit, Plaintiff avers that Trattner exercises substantial control over SONA's Cranston operations. Pl.'s Aff., ¶ 7. Because of Trattner's status as a SONA Director and the fact that Morey was SONA's President, Plaintiff asserts that she complained to Trattner about Morey's offensive and harassing conduct in 2001. Id., ¶ 8. Plaintiff states that Trattner assured her that he would speak with Morey about his behavior, however she alleges that she was faced with increasingly hostile treatment and that Trattner "failed to adequately investigate or remedy Morey's unwelcome sexual conduct." Pl.'s Aff., ¶¶ 8-9. Between 2002 and 2005 (after Plaintiff's complaint to him), Trattner visited the Cranston facility at least ten times for a total of thirty-seven days. Aff. of Trattner, ¶ 5. Plaintiff contends that Defendant had ample opportunities to remedy the hostile work environment at SONA, and he failed to do so. In her Second Cause of Action, Plaintiff states that Defendants' inaction regarding the

sexual harassment interfered with her job performance and created an intimidating, hostile and offensive work environment. Compl., ¶ 58.

It is well established that under anti-discrimination statutes such as Title VII, an employer can be vicariously liable for discriminatory acts committed by supervisory personnel. See, e.g., Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). See also Arrieta-Colon v. Wal-Mart Puerto Rico, Inc., 434 F.3d 75, 89 (1st Cir. 2006) (a jury verdict of hostile work environment was supported, in part, by evidence that the plaintiff's supervisors knew about the harassing conduct and did not stop it). In this case, Defendant Trattner visited SONA's Cranston facility to review their business operations, which presumably included the conduct of SONA's President, Morey. In 2001, Plaintiff contends that she put Trattner on notice of Morey's alleged offensive and harassing conduct. During one of his supervisory visits to Rhode Island, Plaintiff contends that Trattner had a duty to investigate and/or remedy the situation. Whether or not Trattner was present in Rhode Island when he was informed of the alleged harassment by Plaintiff is immaterial.

The claim underlying the litigation directly relates to Trattner's activities within Rhode Island because Plaintiff contends that he was on notice of Morey's behavior, he had the authority and opportunity to take steps to correct the situation, and he failed in his duty.

In Plaintiff's Eighth Cause of Action, she contends that all the Defendants, acting in concert, conspired to deprive her of her civil rights by repeated acts of harassment, retaliation, intimidation, bad faith and threat. Compl., ¶ 87. For understandable reasons, Trattner's arguments focus on this general conspiracy allegation rather than on the more specific failure to act allegation brought against him and discussed above in detail. The First Circuit has held that a complaint alleging a conspiracy to deprive a plaintiff of his civil rights cannot survive a motion to dismiss if such complaint contains

only conclusory allegations of conspiracy which are not supported by material facts. Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977). Although conspiracy claims are sometimes given special consideration when a court is asked to test the sufficiency of a complaint, this District Court has held that a plaintiff should not be permitted to hale a defendant into court based only on a bald-faced, conclusory assertion of conspiracy with no supporting factual allegations. Thompson Trading, Ltd. V. Allied Lyons PLC, 124 F.R.D. 534, 537 (D.R.I. 1989).

Plaintiff alleges that Trattner and the other named Defendants "conspired, planned, agreed and intended to harass, intimidate and cause economic and psychological injury to [her]." Compl., ¶¶ 85-87. Additionally, Plaintiff argues that this claim of conspiracy should keep Trattner in the case until Plaintiff is able to discover the role he played. However, Plaintiff concedes that, without the benefit of discovery, she does not know the role Trattner played in the alleged efforts by Morey and SONA to intimidate her into dropping her claims, and that she cannot, at this time, prove that Trattner participated in her retaliatory firing. Pl. Opp'n to Mot. to Dismiss at 7. While Trattner argues convincingly that Plaintiff fails to state sufficient factual allegations to establish specific personal jurisdiction arising out of the conspiracy claim, it is not dispositive of the issue of personal jurisdiction. As discussed above, Plaintiff has made specific factual allegations against Trattner that go beyond the conspiracy theory.

Finally, Trattner's reliance on McCabe v. Basham, No. 05-CV-0073-LRR, 2006 WL 399266 (N.D. Iowa Feb. 16, 2006), is misplaced, as that case is plainly distinguishable. In McCabe, the Court refused to exercise personal jurisdiction over two high-level federal officials who allegedly participated in a conspiracy to violate the plaintiff's constitutional rights. While the Court recognized that personal jurisdiction cannot be premised "solely" on a defendant's supervisory

status, it based its decision primarily on the lack of any factual allegations supporting the plaintiff's conclusory conspiracy allegations. Further, it noted the complete absence of any facts or even allegations that the defendants ever visited the forum state, had any connection to the forum state or the events underlying the complaint. As discussed above, the assertion of personal jurisdiction in this case is not based "solely" on Trattner's supervisory status. Trattner has sufficient contacts with this District which are related to Plaintiff's Complaint to support the lawful exercise of personal jurisdiction over him.

**2. Purposeful Availment**

The second prong of the due process test considers whether a defendant has "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable." Sawtelle, 70 F.3d at 1391 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)). Two factors are considered in the purposeful availment analysis: voluntariness and foreseeability. See Ticketmaster, 26 F.3d at 207. "To demonstrate purposeful availment, the plaintiff must proffer 'evidence that the defendant[s] actually reached out to the plaintiff's state of residence to *create* a relationship – say, by solicitation, – the mere fact that the defendant[s] willingly entered into a tendered relationship does not carry the day.'" PFIP, LLC v. Planet Fitness Enter., Inc., No. 04-250-JD, 2004 WL 2538489, at *7 (D.N.H. Nov. 10, 2004) (quoting Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 292 (1st Cir. 1999)). The requirement "depends upon the extent to which the defendants voluntarily took action that made it foreseeable they might be required to defend themselves in court in [the forum state]." Id. (citing Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 11 (1st Cir. 2002)).

In this case, the analysis of the Purposeful Availment prong of the minimum contacts test overlaps the analysis of the Relatedness prong. Accepting all of the facts alleged in the light most favorable to Plaintiffs as required, the Court concludes that the allegation that Trattner failed to act in accordance with his duty as a Director/Supervisor is also supportive of a finding that he purposefully availed himself to the jurisdiction of Rhode Island. Based on the sworn statements made by Trattner and Plaintiff in relation to this Motion, there is also sufficient evidence to meet the voluntariness requirement.

The issue of foreseeability "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Burger King, 471 U.S. at 475. Here, the contacts were clearly not "random" or "attenuated." Trattner's alleged awareness of Morey's claimed improper behavior, his authority to investigate/remedy the situation and his failure to act, all indicate it was foreseeable he could be haled into Rhode Island court. Additionally, SONA's Annual Report filed with the Rhode Island Secretary of State for both 2004 and 2005 identifies Trattner as a SONA Director. See R.I. Gen. Laws § 7-1.2-801 ("the business and affairs of a corporation are managed by a board of directors"). SONA is a Rhode Island Corporation with its principal place of business in Rhode Island. The reports also list a Rhode Island address for Trattner. See R.I. Gen. Laws § 7-1.2-1501(a)(3) (the annual report must include the "names and respective addresses of the directors and officers of the corporation"). Trattner purposefully availed himself to this District when he agreed to serve as a director of a Rhode Island corporation whose principal place of business is in Rhode Island, and thus to accept both the privileges and responsibilities of such position. Id.

**3. Gestalt Factors**

The third prong of the test involves a determination of whether or not the Court's exercise of jurisdiction over Defendant is reasonable. United Elec., 960 F.2d at 1089. In making this determination, the Court must apply the following "Gestalt" factors. See, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

**(a) Defendant's Appearance**

In order for a defendant to show that he is unduly burdened by appearing in the forum state, he must "...demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64. Courts have recognized, however, that it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction. See id. at 64. Thus, absent a showing of a special or undue burden, mere economic considerations are insufficient. Trattner alleges no special burden. As such, this factor weighs in favor of this Court exercising jurisdiction over Trattner.

**(b) Forum State's Interest**

In order to determine the forum state's interest in hearing the dispute, this Court should "not...compare [its] interest to that of some other jurisdiction...." Foster, 46 F.3d at 151 (citing Burger King, 471 U.S. at 483 n.26. Accordingly, even though Trattner's home country may have an interest in litigating this case, this Court is not called on to weigh the forums' respective interests. Trattner is charged with violations of Rhode Island and federal employment laws. SONA is located in Rhode Island, and this state has an interest in securing the safety and well-being of people employed at a Rhode Island corporation. This factor weighs in favor of exercising jurisdiction over Trattner.

**(c) Plaintiffs' Interest in Relief**

This factor clearly weighs in Plaintiff's favor. The goal is to ensure that a plaintiff is able to obtain "convenient and effective relief." Pritzker, 42 F.3d at 64. Central to this goal is that the court "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Id. (citing Ticketmaster, 26 F.3d at 211). Here, it is readily apparent that Plaintiff wishes to litigate in this forum.

**(d) Judicial System's Interests**

The focus of this factor is on the "judicial system's interest in obtaining the most effective resolution of the controversy." Nowak v. Tak How Inv., Ltd., 94 F.3d 708, 718. Most of the defendants and witnesses in this case are located in Rhode Island. All other claims relating to the other defendants will be heard in this Court. The most effective resolution of this controversy would be to hear all of these related claims together in Rhode Island.

**(e) States' Common Interest**

The last Gestalt factor "addresses the interests of the affected governments in substantive social policies." Id. at 719. In considering this factor, "the most prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." Sawtelle, 70 F.3d at 1395 (quoting Burger King, 471 U.S. at 473). Rhode Island does have an interest in securing the safety and well-being of people employed within the state. Accordingly, this factor weighs in favor of this Court exercising jurisdiction over Trattner.

Since none of the Gestalt factors weigh in Trattner's favor, they cannot outweigh the analysis with regard to the first two prongs of the jurisdictional test. All of the Gestalt factors support the exercise of personal jurisdiction over Trattner.

**Conclusion**

For the reasons discussed above, this Court finds that all prongs of the three-factor test for specific personal jurisdiction are satisfied and that this Court may properly exercise personal jurisdiction over Trattner. Accordingly, I recommend that Defendant Trattner's Motion to Dismiss for Lack of Personal Jurisdiction (Document No. 5) pursuant to Fed. R. Civ. P. 12(b)(2) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

LINCOLN D. ALMOND
United States Magistrate Judge
June 26, 2006